UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DAVION C. JACKSON, )<br>)<br>Defendant. ) | Case No. 4:11CR315 ERW (FRB) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Frederick R. Buckles [ECF No. 37], pursuant to 28 U.S.C. § 636(b).

In the Report and Recommendation, Magistrate Judge Buckles concluded that Defendant Davion C. Jackson's ("Defendant") Motion to Suppress Evidence and Statements [ECF No. 27] should be denied. Defendants filed timely Objections to the Report and Recommendations [ECF No. 45] and the United States filed a Response [ECF No. 46]. As detailed below, the Court conducts a *de novo* review of the record to rule on Defendant's objections.

**I.   LEGAL STANDARD**

"[D]istrict courts may designate magistrate judges to conduct, *inter alia*, evidentiary hearings on suppression motions and to submit to a district judge proposed findings of fact and recommendations for the disposition of the matter." *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)). Section 636(b)(1) also states that when a party objects to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). A district

court has wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.

## II. BACKGROUND

Defendant has been indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of knowingly possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). Defendant filed a Motion to Suppress Evidence and Statements [ECF No. 27], seeking to exclude a handgun recovered from his person and statements he made during a subsequent interrogation. *See Wong Sun v. United States*, 371 U.S. 471 (1963). Defendant's sole argument for suppression was that police stopped and searched him without a "reasonable suspicion" that he was engaged in ongoing criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968). The United States filed a Response opposing Defendant's Motion [ECF No. 29].

On August 23, 2011, the Magistrate Judge held an evidentiary hearing on Defendant's Motion [Transcript, ECF No. 40]. At that hearing, the United States called St. Louis County Police Officer Dustin Partney to testify about the stop, search, and policehouse interrogation of Defendant. The United States also introduced a *Miranda* waiver form that Defendant signed prior to the interrogation. No other witnesses or exhibits were presented by either party.

Defendant submitted a Post-Hearing Memorandum in Support of Defendant's Motion to Suppress Evidence and Statements [ECF No. 33]. In it, Defendant relied heavily upon *United States v. Jones*, 606 F.3d 964 (8th Cir. 2010). On September 23, 2011, the Magistrate Judge held a motion hearing, at which the parties, in large part, debated how *Jones* affects the case at bar [Transcript, ECF No. 41].

The Magistrate Judge then issued a Memorandum, Report and Recommendation on Defendant's Motion [ECF No. 37]. The Magistrate Judge concluded that Officer Partney's

testimony was sufficient to establish reasonable suspicion to both stop and search Defendant, and that *Jones* was distinguishable from the instant case. Accordingly, the Magistrate Judge recommended that Defendant's Motion to Suppress be denied.

The Court has reviewed, in full, all materials referenced above. The Court finds that the Magistrate Judge's findings of fact and conclusions of law to be an accurate statement of the evidentiary record and well-supported by established principles of law. Accordingly, the Court will sustain, adopt, and incorporate herein the Magistrate's Report and Recommendation in its entirety. As such, the Court will refer to the findings of fact and conclusions of law set forth therein as its own.

Defendant has raised various objections to the Court's denial of his Motion. Defendant's objections will now be addressed, in turn.

## III. DEFENDANT'S FACTUAL OBJECTIONS

Defendant raises various objections to the Court's findings of fact. First, Defendant makes a broad objection that its findings are against the great weight of the evidence. Upon review of the record, this objection will be denied.

Next, Defendant objects to the finding that police were patrolling Glasgow Village on the day of Defendant's arrest due to its high volume of crime, particularly burglaries and assaults. Defendant submits that Officer Partney's testimony established that police were in the area on that day due to an increase in burglaries. In response to questioning by the Magistrate Judge at the evidentiary hearing, Officer Partney testified his unit was patrolling Glasgow Village on the day Defendant was arrested because of an increase in property crimes, particularly burglary, but that the area suffers from a continuously high level of crimes of violence, such as assault. The record thus supports the Court's finding, and Defendant's objection will be denied.

3

Finally, Defendant makes a series of related objections to the Court's findings concerning the manner in which Defendant was wearing his shorts. The Court found that Defendant's shorts were "sagging" or hanging low on his hips, that Defendant pulled up his sagging shorts while looking at the passing police cars, and that Defendant's shorts "dropped back to the hips very quickly" after he released them from his grasp. In contrast, Defendant submits that the record establishes only that his shorts were "loose fitting below the waist," that he "grabbed with his right hand and pulled the right side of his shorts back up into a more natural waist position," and that when he released them his shorts merely "fell quickly." After reviewing the record, the Court finds that its factual findings are supported by Officer Partney's testimony in response to questioning on both direct and cross-examination, and thus Defendant's objections on this point will be denied.

## IV. DEFENDANT'S LEGAL OBJECTIONS

Defendant also raises various objections to the Court's conclusions of law. Again, Defendant raises an initial broad objection that these conclusions are against the great weight of existing law. This objection will be denied.

Next, Defendant makes a series of objections that challenge the Court's conclusion that police had a reasonable suspicion that Defendant was carrying a gun in his shorts. First, Defendant contends that Officer Partney's observations of Defendant did not give rise to reasonable suspicion, because he did not testify that he saw either a heavy object or the outline of such an object in Defendant's pocket, and because Officer Partney's testimony establishes that Defendant's shorts dropped back down due to their ill-fit. Defendant's objections are without merit. There is no requirement that a police officer directly observe a heavy object in a suspect's pocket before that officer's testimony can give rise to reasonable suspicion. Instead, police

4

officers may "draw on their own experiences and specialized training to make inferences and deductions about the cumulative information available to them[.]" *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Here, Officer Partney testified why he concluded Defendant was carrying a gun: he observed Defendant pulling up his shorts as he turned to watch each police car pass; his police training and experience informed him that individuals taking such actions carried guns; and he observed Defendant's shorts falling in way that caused him to believe his pocket contained a heavy object. Given that courts must accord deference to a police officer's training and experience, *Jones*, 606 F.3d at 967, Officer Partney's observations and conclusions are properly considered in evaluating reasonable suspicion. In addition, the Court's finding of reasonable suspicion is not predicated upon this basis alone; rather, it was only one aspect of the "totality of the circumstances" that gave rise to reasonable suspicion. *Id*. at 966. Accordingly, Defendant's objection on this point will be denied.

Next, Defendant objects to his known gang affiliation being considered as a factor in the reasonable suspicion analysis. Defendant attempts distinguish *United States v. Flett*, 806 F.2d 823 (8th Cir. 1986) and *United States v. Cornelius*, 391 F.3d 965 (8th Cir. 2004) by arguing that searches of suspects in those cases were supported by additional circumstances beyond the suspect's gang affiliation. Defendant's argument is unpersuasive. First, additional circumstances beyond Defendant's gang affiliation also supported Officer Partney's stop and frisk in the instant case. Secondly, it is well-established that gang affiliation can be considered as a factor supporting reasonable suspicion. *See, e.g.*, *Cornelius*, 391 F.3d at 967. Accordingly, it was not improper for the Court to consider Defendant's known gang affiliation when conducting reasonable suspicion analysis.

5

Next, Defendant objects to his nervous and tense behavior being considered as a factor in the reasonable suspicion analysis. Defendant argues that these behaviors cannot give rise to reasonable suspicion because they occurred only after Officer Partney had already made up his mind to stop and search Defendant. Defendant's argument conflicts with the United States Supreme Court precedent, which states clearly that the Fourth Amendment regulates "conduct rather than thoughts" and that analysis of government actions should be "predominantly an objective inquiry." *Ashcroft v. al-Kidd*, No. 10-98, 131 S.Ct. 2074, 2080 (U.S. 2011) (citations omitted). Therefore, Officer Partney's mere decision to stop Defendant did not cause a Fourth Amendment stop to occur. Instead, a Fourth Amendment stop occurs when either an officer applies physical force to a suspect, or a suspect submits to an officer's assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). After reviewing the record with this principle in mind, it is not entirely clear whether Officer Partney observed Defendant exhibiting the nervous behavior before or after Defendant had been stopped. However, even if Officer Partney's observations occurred afterwards and thus should be excluded from reasonable suspicion analysis, the circumstances that remain are sufficient to establish reasonable suspicion. Accordingly, Defendant's objection on this point will be denied.

Defendant's final objection is that the instant case is not distinguishable from *Jones*. While there are certain similarities between the two cases, the Court concludes *Jones* does not control here because of the amount of information Officer Partney knew about Defendant prior to stopping and frisking him. In *Jones*, the Eighth Circuit wrote that it was "remarkable that nowhere in the district court record did the government identify what criminal activity [the police officer] suspected." *Jones*, 606 F.3d at 966. The concurrence made this point even more forcefully:

> [T]he question here is whether anyone reasonably *suspected* of having a firearm in his or her pocket or purse may be forcibly stopped and searched when the police have no particularized reason to suspect that the person is *unlawfully* carrying a weapon.
>
> *Id*. at 968 (Loken, C.J., concurring) (emphasis in original).

In *Jones*, at the time of the stop and frisk the officer knew nothing about suspect himself; it was only later that the police learned the suspect's identify and status as a felon. *See id*. at 965.

The instant case presents a very different situation because Officer Partney immediately recognized Defendant from prior law enforcement contacts. Officer Partney knew that Defendant was affiliated with a street gang whose members carried firearms, had previously committed felonies, and was too young to obtain a permit to carry a concealed weapon. In addition, Officer Partney testified that he stopped and frisked Defendant because he suspected Defendant was carrying a concealed weapon in violation of Missouri state law. *See* Mo. Rev. Stat. § 571.101.2(1); Mo. Rev. Stat. § 571.030.1(1); *see also United States v. Brown*, 550 F.3d 724 (8th Cir. 2008) (reasonable suspicion supported stop of suspect's car, when officers had observed suspect pull gun from pants' pocket and believed him to be too young under Missouri law to carry a concealed weapon). Officer Partney's knowledge of Defendant, taken together with his observations and law enforcement experience, distinguish the instant case from *Jones*. Officer Partney did not stop and frisk Defendant based upon an mere inarticulate "hunch"; instead, upon consideration of the "totality of the circumstances," he had a "particularized and objective basis" for suspecting that Defendant was unlawfully carrying a concealed weapon. *Arvizu*, 534 U.S. at 273-74 (citations omitted).

## V. CONCLUSION

Defendant's objections provide no basis for the Court to reject its conclusion that reasonable suspicion justified Officer Partney's stop and frisk of Defendant. Because that stop

and frisk was constitutional under *Terry*, there is no basis for excluding the handgun recovered from Defendant's person or the statements he subsequently made to police.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence and Statements [ECF No. 27] is **DENIED.**

Dated this 25th Day of October, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE